NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3051

KWI O'CONNELL,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Kwi O'Connell, of Spanaway, Washington, pro se.

Alex P. Hontos, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent.  With him on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Kirk T. Manhardt, Assistant Director.

Appealed from:  Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2010-3051

KWI O'CONNELL,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Petition for review of the Merit Systems Protection Board
in case no. SF0752090313-I-1.

_____

DECIDED: April 12, 2010

_____

Before BRYSON, CLEVENGER, and LINN, <u>Circuit Judges</u>.

PER CURIAM.

## DECISION

Kwi O'Connell appeals the decision of the Merit Systems Protection Board upholding her removal from her civilian position with the Department of Defense. We <u>affirm</u>.

## BACKGROUND

Ms. O'Connell was employed as a Sales Store Checker at the McChord Air Force Base Commissary. In 2008, Ms. O'Connell was investigated for engaging in retail

"sweethearting" in which she and another cashier, Adela Cosare, were suspected of providing unauthorized discounts to one another through the improper crediting of coupons.

An audit of transactions performed by Ms. O'Connell between March 16, 2008, and April 13, 2008, disclosed that she had entered $822.03 in unauthorized deductions, an amount that was later revised to $817.03. The deductions were made by scanning more than one coupon per item, applying invalid coupons or ones that did not match any purchased items, and using a bypass code to enter manual deductions for amounts that were greater than any available coupon amount (and sometimes greater than the price of any of the purchased items). Those deductions resulted in numerous transactions in which the amount paid by the purchaser was only a small fraction of the original total cost of the items purchased. For example, journal entries discovered in the audit showed a payment of $15.92 instead of $140.83 (journal transaction 35 on March 17); a payment of $7.20 instead of $125.73 (journal transaction 54 on March 30); a payment of $13.20 instead of $155.77 (journal transaction 64 on March 30); a payment of $9.30 instead of $108.75 (journal transaction 11 on March 31); and a payment of $63.47 instead of $185.96 (journal transaction 56 on April 13).

On May 25, when she returned from leave and reported for work, Ms. O'Connell was escorted to the base police department together with Ms. Cosare. After being advised of her legal rights, Ms. O'Connell declined to provide a statement. Ms. Cosare provided a sworn written statement in which she admitted engaging in "sweethearting" and stated that she had done so at Ms. O'Connell's behest. Thereafter, the base

commander issued an order barring Ms. O'Connell from entering McChord Air Force Base, which prevented her from returning to work at that time.

On January 30, 2009, the Defense Commissary Agency issued a decision removing Ms. O'Connell from her position for conversion of government property and unauthorized absence from work. Ms. O'Connell appealed to the Board.

After conducting a hearing, the administrative judge sustained both charges. With respect to the conversion charge, the administrative judge determined that the journal transactions, together with Ms. Cosare's admission of wrongdoing and other witness testimony, clearly supported the allegations of conversion. The agency did not possess the actual coupons used in the transactions, other than for April 13, because coupons are ordinarily turned into the cash office on a daily basis. However, the administrative judge concluded that the journal transactions provided strong circumstantial evidence of conversion, even without the coupons. In any event, the administrative judge found the April 13 transactions alone to be sufficient to support the conversion charge.

Ms. O'Connell testified and denied the conversion charge. Ms. Cosare also denied the charge, disavowing her earlier statement admitting her involvement in the misconduct. The administrative judge found both witnesses to be lacking in credibility. The administrative judge considered Ms. O'Connell's demeanor "evasive and guarded" and observed that "when she did not want to respond she would answer that she did not know, that she did not remember or acted like she did not understand," even though she had no difficulty understanding and responding to questioning by her own representative. The administrative judge discredited Ms. Cosare's testimony, finding it

to be "totally inconsistent with her prior written statement where she acknowledged that on approximately five occasions she engaged in improper use of coupon."

The administrative judge also sustained the charge of unauthorized absence because, even though Ms. O'Connell contended that she reported for work on May 25 before being escorted to the police station, she conceded that she did not report for work on May 26 or thereafter. The administrative judge acknowledged that the base commander's order barring Ms. O'Connell from the base prevented her from reporting to her work station. The administrative judge concluded, however, that the order resulted from Ms. O'Connell's own misconduct and that there was "no evidence to show that she requested a modification of the debarment order or that the agency played any role in the Commander's decision to bar her."

DISCUSSION

On appeal, Ms. O'Connell raises a number of objections to the Board's decision. Most of those objections constitute disagreements with factual findings made by the administrative judge with respect to the conversion charge. Our review of factual findings is deferential and limited to assessing whether the findings were supported by substantial evidence. "We do not substitute our judgment for that of the board as to the weight of the evidence or the inferences to be drawn therefrom." Cross v. Dep't of Transp., 127 F.3d 1443, 1448 (Fed. Cir. 1997). In this case, after a close review of the facts in the record, we are convinced that the evidence amply supports the administrative judge's conclusion that the agency proved the charged misconduct.

First, Ms. O'Connell contests the accuracy and completeness of the evidence submitted by the agency with respect to the charged conversion. She argues that the

agency's failure to provide the actual coupons from the days before April 13 means that the agency only supplied "19 percent of the evidence in question." She also complains that the April 13 booklet of coupons contains errors that undermine the validity of that evidence, including the presence of 116 more coupons than accounted for in the journal transactions, and a discrepancy of $12.36 in the total value of coupons credited. Ms. O'Connell also lists eight $1.00 Centrum coupons and five other coupons that she claims should have been present, but which she was unable to locate in the booklet. The administrative judge, however, did not rely solely on the documentary evidence of the coupons; rather, she was persuaded that the evidence from the journal transactions was supported by credible testimony from the agency's witnesses, as well as other evidence such as Ms. Cosare's written admission. Ms. O'Connell's complaints as to minor errors with respect to the coupons does not undermine the administrative judge's finding that the evidence supported the charge of conversion.

Ms. O'Connell raises a number of other evidentiary and factual issues, including her contentions that (1) the agency failed to prove the transactions at issue involved Ms. Cosare as opposed to other customers; (2) the investigating officer failed to take any investigative notes; (3) a review of local supermarket prices shows that deep discounts of more than 70 percent are not unknown; and (4) it was accepted practice to use the manual bypass code to combine coupons as a way of speeding up the checkout lines. As a more general matter, Ms. O'Connell also challenges the administrative judge's finding that her testimony was not credible. She argues that she has trouble understanding English, that she was under medication at the time of the hearing, and that the questioning at the hearing was "rude and too direct." Those arguments all

constitute challenges to the administrative judge's weighing of the evidence; they do not persuade us that the administrative judge's conclusion that the agency proved its charge of conversion is unsupported by substantial evidence.

Ms. O'Connell claims that the agency failed to prove specific intent to commit the conversion offense set forth in 18 U.S.C. § 641, which requires that the wrongdoer "must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion." Morissette v. United States, 342 U.S. 246, 271 (1952). As the administrative judge noted, however, Ms. O'Connell acknowledged entering the transactions at issue; Ms. Cosare admitted that she had engaged in the misconduct with Ms. O'Connell; and an eyewitness testified to the acts being committed on multiple occasions. The evidence was thus sufficient to establish the requisite intent.

Ms. O'Connell next contends that the agency "failed to show the cash cage's involvement in daily transactions, and that the coupons provided to the cash cage were for all the transactions completed for that day." She also states that the cash office accepted her register each day and that this "partially alleviates the cashier of further responsibility," because the acceptance indicates that there were no problems or irregularities with those transactions. To the extent that those contentions challenge the sufficiency of the evidence, we reject them; as noted, the evidence before the administrative judge plainly constituted substantial evidence of the conversion. To the extent that those statements are directed to the nexus requirement of the pertinent statute, they misapprehend the nature of the nexus that must be proved. The nexus requirement relates to whether the agency action is taken "for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). The charged acts of

conversion plainly satisfy that requirement, as there can be no dispute that the Defense Commissary Agency has a strong interest in preventing its cashiers from engaging in the conversion of government property.

Ms. O'Connell contends that the penalty of removal is overly harsh and disproportionate to the offense, and that a proper consideration of the so-called Douglas factors set forth in Douglas v. Veterans Administration, 5 M.S.P.R. 280 (1981), would weigh in favor of leniency. In essence, she claims that she is entitled to a lesser penalty because she has a relatively clean disciplinary record, her offense was "unintentional," and she has since learned her lesson.

We have noted that the choice of penalty "is committed to the sound discretion of the employing agency and will not be overturned unless the agency's choice of penalty is wholly unwarranted in light of all the relevant factors." Guise v. Dep't of Justice, 330 F.3d 1376, 1382 (Fed. Cir. 2003). The Douglas factors are generally relevant in selecting a penalty, but they are not a checklist that the agency must "appl[y] mechanically." Nagel v. Dep't of Health & Human Servs., 707 F.2d 1384, 1386-87 (Fed. Cir. 1983). Theft of a significant amount of property by a person occupying a position of trust is a serious offense for which an agency can reasonably remove an employee even in the face of other factors favoring the employee. See Vannoy v. Office of Pers. Mgmt., 75 M.S.P.R. 170, 175-76 (1997) (removal is a reasonable penalty for a first-time offense of theft where the value of the property is not de minimis). In light of the seriousness of the offense and the fact that the offense goes to the core of Ms. O'Connell's responsibilities, we reject Ms. O'Connell's contention that the agency's choice of penalty was "wholly unwarranted."

2010-3051                                    7

Ms. O'Connell briefly adverts to several other arguments, none of which has any merit. She complains that she was given no advance warning of issues or concerns with her job performance. But, as the government properly notes, Ms. O'Connell was removed under adverse-action procedures rather than performance-based procedures, and thus is not entitled to advance notice as to her performance. She asserts that the debarment order issued by the base commander was a violation of her due process rights under the Fifth Amendment because it was made without any notice or hearing. The debarment order, however, was issued by the base commander, not the employing agency; moreover, even assuming the debarment order was procedurally flawed, the principal charge against Ms. O'Connell was the conversion charge; any error relating to the charge of unauthorized absence from work was harmless. See Guise, 330 F.3d at 1381-82. Finally, Ms. O'Connell argues that her "civil rights" were violated because she was arrested even though many of the coupons had already been processed by the agency. The decision to escort her to the base police station for questioning was supported by the evidence of the audit, and even if the decision to detain her were somehow improper, any impropriety in that regard had no effect on the case against her for conversion of government property.